1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## SOUTHERN DISTRICT OF CALIFORNIA

8

9   HECTOR JUAN AYALA,

10                                        Petitioner,

         vs.

11

12

13   ROBERT L. AYERS, JR., Warden of the
     California State Prison at San Quentin,

14                                        Respondent.

15

CASE NO. 01cv1322-IEG(PCL)

Order Denying Petitioner's Motion for
Summary Adjudication on Group 6
Claims [Doc. No. 230-1]; Granting
Respondent's Motion for Summary
Adjudication on Group 6 Claims [Doc.
No. 228-1]

16       Petitioner Hector Juan Ayala and Respondent Steven Ornoski have moved for summary

17   adjudication on two of Petitioner's Group 6 claims (Grounds 18 and 27) of his Third Amended

18   Petition.  The parties have filed opposition and reply briefs.

19       A hearing was held before Chief Judge Irma E. Gonzalez on October 12, 2007.  Tiffany

20   Salayer appeared on behalf of Petitioner.  Steven Oetting of the California Attorney General's

21   Office appeared on behalf of Respondent.  Upon consideration, the Court DENIES Petitioner's

22   motion for summary adjudication and GRANTS Respondent's motion for summary adjudication

23   on these Group 6 claims.

24                                    ***OVERVIEW***

25       By an amended information filed on January 20, 1987, Petitioner Hector Juan Ayala

26   ("Petitioner") and his brother Ronaldo Medrano Ayala were charged with the murders of Jose Luis

27   Rositas, Marcos Antonio Zamora and Ernesto Dominguez Mendez.  The information alleged that

28   the murders were committed on or about April 26, 1985, during a robbery attempt where the

brothers held four men captive in an automobile repair shop.  Both men were also charged with the attempted murder of Pedro Castillo, who was shot during the drug-related robbery attempt, but who escaped and survived. At trial, the prosecution also presented evidence that a third man, Jose Moreno, helped in the commission of these crimes.  Castillo provided the information to police that led to the arrests and was the key prosecutorial witness at trial.

Petitioner was convicted on August 1, 1989, of three counts of first-degree murder in violation of California Penal Code ("Cal. Penal Code")  § 187, one count of attempted murder in violation of Cal. Penal Code §§ 664 and 187, and one count of robbery and three counts of attempted robbery in violation of Cal. Penal Code §§ 664 and 211--each count with findings that Petitioner used a firearm in the commission of the crimes in violation of Cal. Penal Code § 12022.5.  Petitioner was also found guilty of the two special circumstance allegations, multiple murder under Cal. Penal Code § 190.2(a)(3), and murder in the attempted commission of a robbery under Cal. Penal Code § 190.2(a)(17)(1).  The jury returned a verdict of death for each of the three murders on August 31, 1989, and the court entered judgment in accordance with the verdict on November 30, 1989.

Petitioner filed his opening brief on automatic appeal to the California Supreme Court on April 23, 1998, raising nineteen (19) separate issues.  The California Supreme Court denied the appeal on August 28, 2000.  People v. Ayala, 24 Cal.4th 243 (2000).  On November 15, 2000, the state court denied the petition for rehearing.  On March 15, 2001, Petitioner filed a writ of Certiorari with the United States Supreme Court, which was denied on May 14, 2001.  On May 14, 2001, his judgment became final.

On August 9, 1999, Petitioner filed a habeas petition with the California Supreme Court, raising three (3) grounds for relief.  Petitioner was not granted an evidentiary hearing on those claims and his petition was summarily denied on August 30, 2000.

On July 20, 2001, Petitioner filed a request for appointment of counsel to handle his federal habeas petition.  Petitioner filed an initial petition in this Court on May 14, 2002.  After filing a Second Amended Petition on December 13, 2002, Petitioner filed a second state habeas petition in the California Supreme Court on March 17, 2003.  The state petition was filed in order to exhaust

1  several unexhausted claims.

2       Petitioner filed his Third Amended Petition with this Court on December 9, 2004.  On

3  April 11, 2006, the Court denied Petitioner's request for summary adjudication and/or an

4  evidentiary hearing regarding Petitioner's Group 1 Claims (Claims 12 and 13) and granted

5  Respondent's motion for summary adjudication of those claims.  On October 23, 2006, the Court

6  denied Petitioner's request for summary adjudication and/or an evidentiary hearing on the Group

7  Two Claims (Claims 1, 2, 4, 5, and 9) and granted Respondent's motion to dismiss those claims.

8  On December 6, 2006, the Court denied Petitioner's request for summary adjudication and/or an

9  evidentiary hearing on the Group Three Claims (Claims 6, 7, 8, 10 and 11) and granted

10 Respondent's motion to dismiss those claims.  On December 19, 2006, the Court denied

11 Petitioner's motion for reconsideration of the Order on Group Two Claims (Claim 5).  On March

12 15, 2007, the Court denied Petitioner's request for summary adjudication and/or an evidentiary

13 hearing on the Group Four Claims (Claims 14, 15, 16, 17, 19, 20, and 21) and granted

14 Respondent's request for summary adjudication on those claims.  On July 9, 2007, the Court

15 denied Petitioner's request for summary adjudication on the Group Five claims (Claims 22, 23, 24,

16 and 25) and granted Respondent's request for summary adjudication on those claims.

17                          ***STANDARD OF REVIEW***

18       Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

19 habeas corpus claims:

20            The Supreme Court, a Justice thereof, a circuit judge, or a district
             court shall entertain an application for a writ of habeas corpus in
21            behalf of a person in custody pursuant to the judgment of a State
             court only on the ground that he is in custody in violation of the
22            Constitution or laws or treaties of the United States.

23 28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

24       In Lindh v. Murphy, 521 U.S. 320, 336 (1997), the United States Supreme Court held that

25 the new provisions of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

26 "generally apply only to cases filed after the Act [AEDPA] became effective."  In capital habeas

27 actions, cases are typically commenced by the filing of requests for appointment of counsel and

28 stays of execution of the petitioners' death sentences.  Petitioner filed his request for appointment

of counsel and stay of execution on April 27, 2001 and filed his petition with this Court on May 6, 2002.  The AEDPA became effective on April 24, 1996, when the President signed it into law.  See id.  Accordingly, the AEDPA applies to this case.

Relevant to this case are the changes AEDPA rendered to 28 U.S.C. § 2254(d), which now reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West 2006).

A decision is "contrary to" clearly established law if it fails to apply the correct controlling authority, or if it applied the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  See Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case."  Id.; Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004).

Even when the federal court undertakes an independent review of the record in the absence of a reasoned state court decision, the federal court must "still defer to the state court's ultimate decision."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  If the state court decision does not furnish any analytical foundation, the review must focus on Supreme Court cases to determine "whether the state court's resolution of the case constituted an unreasonable application of clearly established federal law."  Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir. 2001).  Federal courts also look to Ninth Circuit law for persuasive authority in applying Supreme Court law and to determine whether a particular state court decision is an "unreasonable application" of Supreme Court precedent.  Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

1    Generally, the standard for granting an evidentiary hearing requires Petitioner to make a

2 showing he is entitled to habeas relief.

3          A habeas petitioner is entitled to an evidentiary hearing as a matter
           of right on a claim where the facts are disputed if two conditions are
4          met: (1) where the petitioner's allegations would, if proved, entitled
           him to relief; and (2) the state court trier of fact has not, after a full
5          and fair hearing, reliably found the relevant facts.

6 Rich v. Calderon, 187 F.3d 1064, 1067-68 (9th Cir. 1999); Correll v. Stewart, 137 F.3d 1404, 1411

7 (9th Cir. 1998).  To properly satisfy the first prong, a petitioner is "required to allege specific facts

8 which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).

9    A petitioner is entitled to an evidentiary hearing if the second prong is met through a

10 showing that:

11         (1) the merits of the factual dispute were not resolved in the state hearing; (2) the
           state factual determination is not fairly supported by the record as a whole; (3) the
12         fact-finding procedure employed by the state court was not adequate to afford a full
           and fair hearing; (4) there is a substantial allegation of newly discovered evidence;
13         (5) the material facts were not adequately developed at the state-court hearing; or
           (6) for any reason it appears that the state trier of fact did not afford the habeas
14         applicant a full and fair hearing.

15 Townsend v. Sain, 372 U.S. 293, 312 (1963), overruled in part, Keeney v. Tamayo-Reyes, 504

16 U.S. 1 (1992).  When a petitioner is able to establish a colorable claim for relief, did not fail to

17 develop the facts surrounding his claim, and was never given a state hearing on the claim, the

18 district court must conduct an evidentiary hearing.  Insyxiengmay v. Morgan, 403 F.3d 657, 670

19 (9th Cir. 2005), quoting Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).

20    In addition to being entitled an evidentiary hearing as of right when the petitioner presents

21 colorable allegations and the state court has not reliably found the relevant facts through no fault

22 of the petitioner, a federal court retains discretionary authority to conduct an evidentiary hearing.

23 Townsend, 372 U.S. at 318; Seidle v. Merkle, 146 F.3d 750, 753 (9th Cir. 1998).

24    The AEDPA further limits a district court's decision to conduct evidentiary hearings in

25 § 2254 proceedings. See 28 U.S.C. § 2254(e)(2); see Ortiz-Sandoval v. Clarke, 323 F.3d 1165,

26 1171 n.4 (9th Cir. 2003).  Section 2254(e) provides as follows:

27         If the applicant has failed to develop the factual basis of a claim in State
           court proceedings, the court shall not hold an evidentiary hearing unless the
28         applicant shows that:
           (A) the claim relies on:

1          (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

2          (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

3 (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

6 28 U.S.C. § 2254(e) (West. 2006).

### *TEAGUE v. LANE*

The United States Supreme Court, addressing perceived inconsistencies in its prior rulings regarding retroactive application of its decisions, held that "new" constitutional rules of criminal procedure will not be applied retroactively to cases on collateral review unless they fall within two narrow exceptions.  Teague v. Lane, 489 U.S. 288, 310-311 (1989).  A new rule is one that "breaks new ground or imposes a new obligation on the States or the Federal Government" or one whose "result was not dictated by precedent existing at the time defendant's conviction became final." Id. at 301.  The two exceptions to the Teague rule are: (1) rules placing certain kinds of private individual conduct beyond the power of the criminal law to prohibit, and (2) procedures implicit in the concept of ordered liberty without which the likelihood of an accurate conviction is seriously diminished.  Id., at 311;  Penry v. Lynaugh, 492 U.S. 302, 305 (1989); Graham v. Collins, 506 U.S. 461, 478 (1993).

When the state properly argues that a "defendant seeks the benefit of a new rule of constitutional law, the court must apply Teague v. Lane before considering the merits of the claim." Caspari v. Bohlen, 510 U.S. 383, 389 (1994).  Under Teague, habeas relief is generally unavailable if it is based "on a rule announced after [a petitioner's] conviction and sentence became final." Id.  Therefore, the court must first ascertain the date on which a petitioner's conviction became final. Id.  The second step in a Teague analysis is to determine whether a state court considering the contested claim would have felt compelled by existing precedent to conclude that the rule petitioner seeks was required by the Constitution at the time his or her conviction became final. Id. at 389-90.  Third, if the court determines that a petitioner is seeking relief under a new rule, the court must then decide if that rule falls under one of the two exceptions to Teague.

1    Id. at 390.  Even if Petitioner does not seek to apply a decision creating a new rule, "it is necessary

2    to inquire whether granting the relief sought would create a new rule because the prior decision is

3    applied in a novel setting, thereby extending the precedent."  Stringer v. Black, 503 U.S. 222, 228

4    (1992), referencing Butler v. McKellar, 494 U.S. 407, 414-15 (1990).

5         The California Supreme Court denied Petitioner's direct appeal on August 28, 2000, and

6    denied rehearing on November 15, 2000.  The United States Supreme Court denied certiorari on

7    May 14, 2001, at which time Petitioner's conviction became final.

8         In the Answer to the Third Amended Petition, Respondent asserts that Teague bars this

9    Court is barred from deciding the merits of Claim 18 and 27.  However, in the arguments on Claim

10   18, Respondent's assertion of a Teague bar is limited to a generalized contention that "Petitioner

11   fails to show that the claim does not rest upon a new rule barred under Teague v. Lane, 489 U.S. at

12   288."  [Answer to Third Amended Petition ("Ans.") at 68.]  In the cross-motions, Respondent

13   mounts a detailed argument in support of his contention that Claim 27 is barred by Teague.

14        As to Claim 18, the Ninth Circuit has articulated its view on the duties placed on the state

15   to properly raise and plead a claim made under Teague.  That court has held:

16            If a state seriously wishes to press Teague upon us, at a minimum
             Teague should be identified as an issue (indeed the first issue) on
17           appeal, the new rule of constitutional law that falls within its
             proscription should be articulated, the reasons why such a rule
18           would not have been compelled by existing precedent should be
             explained with particular reference to the appropriate universe of
19           precedent, and an argument should be made why the rule contended
             for is not within one of Teague's exceptions.
20

21   Arredondo v. Ortiz, 365 F.3d 778, 781-782 (9th Cir. 2004).

22        Respondent has not met his burden of properly raising and pleading a Teague bar for Claim

23   18.  Thus, the court's Teague analysis will only concern Claim 27, for which Teague was properly

24   pled.

25        In claim 27, Petitioner asserts his state appellate counsel was denied access to sealed

26   proceedings, including hearings on discovery requests and subpoenas duces tecum, in violation of

27   his Sixth, Eighth and Fourteenth Amendment rights.  Respondent asserts Claim 27 is barred

28   because first, "the essence of the claim is an attack upon the state's post-conviction review

process," and second, "Petitioner would require this Court to announce a new rule allowing him a procedural right to discovery of documents sealed at the time of trial."  (Respondent's Motion to Dismiss ["Resp. MTD"] at 9.)  Petitioner notes that Teague is an affirmative defense, and thus the burden remains on the Respondent to prove its applicability, adding Claim 27 "relies on well-established Constitutional rights to effective assistance of appellate counsel, to a reliable determination of his capital sentence, and to meaningful appellate review and due process." (Petitioner's Opposition ["Pet. Opp."] at 13.)  Respondent supports the contention that Petitioner is advocating the use of a new rule of criminal procedure by noting that "Ninth Circuit law is clear that '[A] petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings.'  Franzen v. Brinkman, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam)."  (Resp. MTD at 9.)

The Supreme Court has held that a decision is not new if "it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law."  Penry v. Lynaugh, 492 U.S. 302, 314 (1989), abrogated on other grounds, Atkins v. Virginia, 536 U.S. 304 (2002).  In the merits briefing, Petitioner cites to two Supreme Court cases, both of which he attempts to apply to the facts of his claim.  In Pennsylvania v. Ritchie, 480 U.S. 39 (1987), the Supreme Court directed a trial court to examine confidential files to look for material of assistance to the defendant in that case.  However, notably, the Court ultimately held that trial's court review of the files was sufficient and the defendant would not be allowed to view any of the confidential files, stating that the Confrontation Clause does not establish a constitutionally compelled rule of pre-trial discovery.  Id. at 52-53.

Petitioner also cites to Alderman v. United States, 394 U.S. 165 (1969), in which on direct appeal the Supreme Court allowed a defendant access to surveillance material involving conversations which either included the petitioner or took place at his residence; the Court's ruling specifically noted the material in question did not include anything outside the knowledge of the defendant. Neither case applied a well-established constitutional privilege "closely analogous" to the claim set forth by Petitioner.  See Penry, 492 U.S. at 314.

1   Granting Petitioner a right of access to sealed trial proceedings is not compelled by

2   existing Supreme Court precedent.  Petitioner's proposed rule indeed "breaks new ground or

3   imposes a new obligation on the State or the Federal Government," and therefore the Court's

4   remaining inquiry is whether either exception to Teague applies to this "new" rule.  Id. at 301.  A

5   rule granting a federal habeas petitioner access to documents sealed at trial does not place private

6   individual conduct beyond the power of the criminal law to prohibit, nor can this rule be

7   considered of a 'watershed' nature.  Id. at 311; see also Penry, 492 U.S. at 305; Graham, 506 U.S.

8   at 478.  Granting Petitioner relief on this claim, that is, access to the sealed ex parte trial

9   proceedings, would result in the creation of a new rule of criminal procedure which does not fall

10   under either of the exceptions to Teague.  However, even assuming Claim 27 would not be barred

11   under Teague, it is without merit for the reasons set forth below.

12   ***DISCUSSION OF MERITS OF PETITIONER'S CLAIMS***

13   Claims 18 and 27 involve an allegation regarding the constitutional infirmity of Petitioner's

14   conviction and sentence stemming from Brady violations by the prosecution and appellate

15   counsels' lack of access to sealed trial proceedings.  Petitioner moves for summary adjudication,

16   or in the alternative, for an evidentiary hearing, on Claims 18 and 27.  Respondent moves to

17   dismiss Claims 18 and 27, on the basis that Claim 18 is conclusory and procedurally barred and

18   Claim 27 is Teague barred and fails on the merits.

19   *1.*      *Claim 18*

20   Petitioner alleges the "prosecution failed to disclose to Petitioner's trial counsel material

21   exculpatory evidence involving Detective Carlos Chacon and witness Meza," in violation of his

22   Sixth, Eighth and Fourteenth Amendment rights.  (TAP at 52.)

23   A.  California Supreme Court's opinion

24   Petitioner raised this claim in his second state habeas petition, and the California Supreme

25   Court denied it, stating in relevant part:

26   The petition for writ of habeas corpus is denied on the merits.  Additionally, the petition is denied as untimely (*In re Robbins*, (1998) 18 Cal.4th 770; *In re Clark*

27   (1993) 5 Cal.4th 750), and successive (*In re Robbins*, *supra*, 18 Cal.4th at p. 788, fin. [sic] 9; *In re Clark*, *supra*, 5 Cal.4th at p. 768; *In re Horowitz* (1949) 33 Cal.2d

28   534, 546-547.)
      Justice Brown would deny the petition solely on the merits.

1  (Second Supplemental Lodgment 2/11/05, Bates 1151.)

2  Respondent states that "Petitioner's claim is barred as both untimely and successive.

3  Given the conclusory nature of this claim, however, Respondent has found it unnecessary to

4  demonstrate the regular and consistent application of those state procedural bars." (Resp. MTD at

5  3.) Petitioner asserts the state court's invocation of the procedural bars do not bar merits review of

6  his claim as they are neither independent of federal law nor are they consistently applied by the

7  state court. (Pet. Opp. at 4-10.)

8  In the instant case, the Court declines to render an opinion on the adequacy of state

9  procedural default rules and instead denies Claim 18 on the merits. Established precedent in this

10  Circuit dictates that a court's decision with respect to evaluating procedural default is to be

11  informed by furthering "the interests of comity, federalism, and judicial efficiency." Boyd v.

12  Thompson, 147 F.3d 1124, 1127 (9th Cir. 1998). Thus, if deciding the merits of a claim proves to

13  be less complicated and less time-consuming than adjudicating the issue of procedural default, a

14  court may exercise discretion to take this course of action in its management of the case.

15  Batchelor v. Cupp, 693 F.2d 859, 864 (9th Cir. 1982), quoted by Boyd, 147 F.3d at 1127. This

16  clearly is the case here. See also Bennett v. Mueller, 322 F.3d 573, 585 (9th Cir. 2003)("the

17  ultimate burden of proving the adequacy of the California state bar is upon the State of California.

18  . .").

19  While acknowledging that it could not grant relief on a claim found to be procedurally

20  defaulted absent a showing of cause and prejudice or a fundamental miscarriage of justice, the

21  Court is not prevented from addressing the merits, and in this case denying the claim based on that

22  merits review. See 28 U.S.C. §2254(b)(2).

23  B. Discussion

24  Petitioner alleges "the prosecution withheld material exculpatory evidence with respect to

25  Detective Chacon's inducements to Meza to lie about Petitioner's involvement in the planning of

26  the robbery/homicides and/or Petitioner's alleged attempt to kill Castillo, as well as Chacon's

27  inducements to other potential or actual witnesses to lie about Petitioner's involvement in the

28  crimes at issue." (TAP at 55.)

1    Respondent maintains this claim is "wholly conclusory" and notes that Petitioner does not

2    even allege what inducements were offered by Chacon to Meza, nor does Petitioner identify who

3    the other witnesses might be.  (Respondent's Opposition ["Resp. Opp."] at 4.)  Respondent also

4    contends that because Petitioner's allegations are based on "facts that were known by and

5    available to defense counsel prior to trial," he cannot meet the burden of demonstrating that the

6    prosecution withheld the evidence, which is necessary to a successful <u>Brady</u> claim.  (<u>Id.</u>)

7    Petitioner bases his allegations on the following facts [taken verbatim from the

8    Third Amended Petition, citations are to the pre-trial and trial transcripts]:

9
10    Detective Carlos Chacon and informant Juan Meza had known one another since grammar school and Chacon had visited Meza over the years during periods when Meza was incarcerated.  [78 RT 9669.]

11
12    On April 26, 1985, within minutes of hearing the initial police broadcasts of a triple homicide at the body shop and before there had been any investigation, Detective Chacon claimed that he immediately guessed Petitioner, his brother and Meza were responsible. [CIV PRT 3624-25; CIX PRT 4326.]

13
14    From 1985, when Meza first talked to Chacon about Petitioner's alleged involvement in the homicides, to 1987 when Meza first talked to the prosecution, Chacon had visited Meza in jail at least eight or nine times. [CVIII PRT 3132, 3135-36; 81 RT 10263, 10268, 10272-73, 10279.]

15

16    During pretrial hearings, Detective Chacon testified that Meza had not told him about his own alleged participation in the planning of the robbery/homicides until 1987. [CIX PRT 4324] Nevertheless, as early as 1985, Meza was clearly a source for Chacon with respect to Petitioner's alleged involvement in the case [CVIII PRT 4229; 81 RT 10271], and yet Chacon never named him as a source to the prosecution team until 1987. [CXIV PRT 4993, 5086-88, 5107, 5117; CXVII 5478.]

17
18
19

20    Detective Chacon was assigned to the SDPD's gang unit [81 RT 10252] and was not a member of the homicide team investigating the murders.  The prosecution asserted that the offenses were not gang-related.  [LXII PRT 243-46; LXXII PRT 587.]  Despite his reported lack of official connection with this case, Chacon inserted himself into the investigation by interviewing potential witnesses [*see eg.*, LXIV PRT 264, 266, 270] and meeting with Meza over a period of two years before Meza conveniently revealed to the prosecution his alleged involvement in the planning of the crimes which bolstered Castillo's story. [XCVIII PRT 3132, 3135-36.]

21
22
23
24

25    The prosecution tried to insulate itself from knowledge about the sources of Detective Chacon's information.  For example, during the preliminary hearing in Petitioner's case, the prosecution placed Castillo in the witness protection program on the basis of information provided to him by Chacon, but the prosecutor did not ask Chacon to reveal the source of that information. [CII PRT 3402, 3410.]

26
27

28    During pretrial proceedings, Detective Chacon made it clear that he refused to talk to defense counsel [V PRT 117] and consistently misled trial court with respect to

1   his having fully complied with discovery orders. [*Compare id.* and XCVIII PRT
2   3147 with LXIII PRT 71-83 and CII PRT 3485, 3497.]

3   The trial court expressed concern with Detective Chacon's method of interviewing
    witnesses because he testified under oath that he chose not to talk to defense
    counsel and was reluctant to put anything he learned from his investigations into
4   writing. [CXXI PRT 5850.]

5   Detective Chacon's career tends to reflect poorly on his ability or willingness to
    follow police procedures. For example, Detective Chacon allegedly accidentally
6   shot one of his partners [sic] while cleaning his gun and allegedly accidentally shot
    and wounded two of his fellow officers by shooting too early in the course of a
7   special border patrol operation. On information and belief, Detective Chacon has
    acknowledged that these incidents occurred.
8
    On information and belief, Detective Chacon believes that the ends justify the
9   means and would make up or do anything to achieve his objective.

10  On information and belief, Detective Chacon has acknowledged that he was
    essentially engaged in a game with trial counsel in which he did not provide
11  relevant information because they did not ask the "right questions."

12  Meza admitted that in 1985 he told his probation officer that he lied about
    everything because of his heroin use. [80 RT 10039.]
13
    On information and belief, Meza told other inmates that he had lied about planning
14  the robbery/homicides with Petitioner and urged them to make up stories of
    Petitioner's involvement in the offenses in order to obtain favorable deals for
15  themselves.

16  (TAP at 53-54.)

17      In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held "the suppression by the

18  prosecution of evidence favorable to an accused upon request violates due process where the

19  evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

20  the prosecution." Id. at 87. The Supreme Court noted that a duty to disclose exists even absent

21  any specific request from the accused and includes the disclosure of impeachment evidence in

22  addition to purely exculpatory evidence. See United States v. Agurs, 427 U.S. 97, 107 (1976); see

23  also United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is material "if there is a

24  probability that, had the evidence been disclosed to the defense, the result of the proceeding would

25  have been different. A 'reasonable probability' is a probability sufficient to undermine confidence

26  in the outcome." Id. at 682. Further, the evidence need not be sufficient to affirmatively prove the

27  defendant innocent; it need only be favorable and material. Gantt v. Roe, 389 F.3d 908, 912 (9th

28  Cir. 2004).

The Supreme Court has outlined three necessary components to demonstrate a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-282 (1999); see also Banks v. Dretke, 540 U.S. 668, 691 (2004).

Any Brady analysis is necessarily predicated on the discovery, after trial, of favorable and material information that was known to the prosecution and unknown to the defense. See Agurs, 427 U.S. at 103; Moore v. Illinois, 408 U.S. 786, 794-95 (1972); see also United States v. Dupuy, 760 F.2d 1492, 1501 n.5 (9th Cir. 1985) ("suppression by the government is a necessary element of a Brady claim. . .")  However, in the instant case, Petitioner has not provided the Court with *any* suppressed evidence, nor is there even an indication that such evidence actually exists.  Instead, Petitioner's claim is based almost entirely on an unsupported assertion that Chacon induced Meza and others to lie about Petitioner's involvement in the crimes and to lie about Petitioner's attempts to kill Meza, that the prosecution knew of this and suppressed the information from the defense, and that such evidence may potentially be contained in the sealed documents at issue in Claim 27.

Petitioner filed the declaration of co-counsel Gisela Caldwell with the second state petition, which stated in part:

> [A] prima facie case was not established until April 4, 2002, when lead counsel and I received information from co-defendant Ronaldo Ayala's federal investigator that a source had spoken to Detective Chacon sometime around June 1990 and Chacon had insinuated to the source that he withheld information regarding this case because defense counsel did not ask the "right questions."  I had spoken to the source of this information on May 4, 1998 who informed me he had spoken with Chacon in 1990.  However, the source did not reveal the contents of that conversation and, more importantly, he stated that he was not aware of Detective Chacon having "compromised" any witnesses.

(Bates 1148.)

Other than the declaration containing mention of Chacon's "insinuation," Petitioner has presented mere supposition to buttress his theory that impeachment evidence was actually withheld by the prosecution. Petitioner's speculation that the prosecution was in possession of evidence regarding Chacon and Meza is premised largely on a declaration by prior co-counsel,

1    who repeats a conversation a third party had with an unnamed "source" regarding that source's

2    purported conversation with Chacon.  There is no declaration from the investigator who spoke to

3    the source, and nothing sworn offered from the actual source of the information.

4         Despite this, Petitioner engages in rampant speculation based on Chacon's statement that

5    he may have had information if the "right" questions were asked.  Petitioner concludes that this

6    vague statement indicates that Detective Chacon induced Meza and others to lie at trial.  These

7    assertions are without any solid foundation, especially when examined with the later statement in

8    Ms. Caldwell's declaration that the source was "not aware of Detective Chacon having

9    'compromised' any witnesses."  (Id.)  Despite including this statement in co-counsel's declaration,

10   Petitioner concludes that the opposite must be true, that Chacon induced Meza and others to lie

11   and that the prosecution withheld such information from the defense at trial.  These conclusory

12   allegations cannot serve as a basis for habeas relief.  See James v. Borg, 24 F.3d 20, 26 (9th Cir.

13   1994) (conclusory allegations that are not supported by specific facts do not merit habeas relief.)

14        Respondent notes that "the allegations that Petitioner does set forth are based on facts that

15   were known by and available to the defense prior to trial, as evident by Petitioner's citation to the

16   preliminary hearing."  (Resp. MTD at 4.)  It is true that a petitioner cannot claim a Brady violation

17   if he was "aware of the essential facts enabling him to take advantage of any exculpatory evidence.

18   . ."  United States v. Brown, 582 F.2d 197, 200 (2nd Cir. 1978); Dupuy, 760 F.2d at 1501 n. 5.

19   Petitioner maintains that the "United States Supreme Court has consistently held that it does not

20   matter, for Brady purposes, whether the defense knew about, or requested the information.  The

21   State must turn over Brady material with or without a request, and even if the defense conceivably

22   could have procured the evidence independently."  (Pet. Opp. at 4.)

23        Petitioner cites to Giglio v. United States, 405 U.S. 150, 154 (1972) in support of his

24   contention, but that decision has no connection to Petitioner's assertion.  In Giglio, the Supreme

25   Court held that a promise made to a witness by a government attorney must be disclosed to the

26   defense regardless of whether the attorney who tried the case had knowledge of the promise.  See

27   id.  The decision makes no mention of whether petitioner had knowledge of the information, and

28   thus bears little relevance to Petitioner's argument.  Petitioner also cites to United States v.

1   Schaffer, 789 U.S. 682 (9th Cir. 1986), in which the Ninth Circuit held that the prosecution

2   inadequately disclosed evidence when they informed a criminal defendant about the existence of

3   tapes regarding a government witness but also erroneously told the defendant that the tapes were

4   of no value to the defense. Id. at 690. Like Giglio, this decision does not support Petitioner's

5   assertion.

6         Ultimately, the relevant inquiry is whether there is any support to Petitioner's contention

7   that the prosecution has improperly withheld evidence in violation of Brady. Petitioner does not

8   present any concrete reason to conclude that Detective Chacon induced Meza or others to testify

9   falsely, nor does he present any proof that the prosecution suppressed such information from

10   Petitioner at trial. Moore v. Illinois, 408 U.S. at 794 ("the heart of the holding in Brady is the

11   prosecution's suppression of evidence. . .").

12         In sum, this Court cannot say the state court's denial of this claim was contrary to, or an

13   unreasonable application of, clearly established federal law, or that it was based upon an

14   unreasonable determination of the facts. Williams, 529 U.S. at 412-13. Therefore, Petitioner does

15   not merit habeas relief on this claim.

16       C. Evidentiary Hearing

17         Petitioner asserts that if summary adjudication is not granted, "then in the alternative an

18   evidentiary hearing should be granted to provide Petitioner with a meaningful opportunity to

19   develop and present the facts necessary to reveal the illegality of his confinement." (Petitioner's

20   Motion for Summary Adjudication ["Pet. MSA"] at 10.) At the proposed evidentiary hearing,

21   Petitioner notes that he would expect to call witnesses including Detective Carlos Chacon, Juan

22   Meza, and a custodian of records for the San Diego District Attorney's Office. (Pet. Opp. at 19.)

23         Respondent maintains that Petitioner is not entitled to an evidentiary hearing, and argues

24   that "Petitioner apparently proceeds from the mistaken assumption that simply by alleging a

25   factual question (even if in a conclusory manner), he may avoid a motion for summary

26   adjudication and proceed to an evidentiary hearing during which he may develop his claim for the

27   first time." (Resp. MTD at 5.) Respondent maintains that because Petitioner has failed to properly

28   develop his claim "in the manner proscribed by state law," his motion for evidentiary hearing must

1  be evaluated under the more stringent standard set forth in 28 U.S.C. § 2254(e)(2).  (See id.);

2  People v. Duvall, 9 Cal.4th 464, 474 (1995).

3       The Supreme Court has held that "[d]iligence will require in the usual case that the

4  prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by

5  state law."  Williams (Michael) v. Taylor, 529 U.S. 420, 437 (2000).  To properly present a claim

6  in a California state court, a petitioner is required to "state fully and with particularity the facts on

7  which relief are sought" and "include copies of reasonably available documentary evidence

8  supporting the claim, including pertinent portions of trial transcripts and affidavits or

9  declarations."  Duvall, 9 Cal.4th at 474.

10       In response, Petitioner avers that he made a "documented effort to develop the facts"

11  during the state court proceedings, including requesting funds for investigation and expert

12  assistance, requesting authority to obtain subpoenas, requesting discovery, reviewing all available

13  files and requesting an evidentiary hearing on the claim.  (Petitioner's Reply ["Pet. Reply"] at 5.)

14  Petitioner asserts that the request for assistance and a hearing were both denied.  (Id.)  In addition,

15  the declaration of Ms. Caldwell indicates that counsel became aware "at an early stage in the

16  appellate process" counsel became aware of "triggering facts" warranting an investigation into the

17  Brady claim, but avers that she did not learn of Detective Chacon's statement until the federal

18  proceedings were pending.  (Bates 1147-48.)  Petitioner argues that because there was no lack of

19  diligence on his part, his motion for an evidentiary hearing should be evaluated without reference

20  to § 2254(e)(2).  (Id.)

21       The Ninth Circuit has held that when presented with a motion for an evidentiary hearing, a

22  district court "must determine whether a factual basis exists in the record to support the

23  petitioner's claim."  Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).  Generally, a

24  petitioner is entitled to an evidentiary hearing if he or she is able to establish a colorable claim for

25  relief, did not fail to develop the facts surrounding his or her claim, and was never given a state

26  hearing on the claim.  Insyxiengmay v. Morgan, 403 F.3d 657, 670 (9th Cir. 2005), quoting Baja,

27  187 F.3d at 1078.  To establish a colorable claim, Petitioner is  "required to allege specific facts

28  which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998).

1    In the instant case, Petitioner has not provided the Court with sufficient factual support for

2    his conclusion that the prosecution has suppressed exculpatory evidence.  The Ninth Circuit has

3    previously noted that a habeas petitioner "is expected to state facts that point to a real possibility of

4    constitutional error."   Wacht v. Cardwell, 604 F.2d 1245, 1247 (9th Cir. 1979), quoting

5    Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977).  Petitioner does not merit an evidentiary

6    hearing based on bald assertions and conclusory allegations, such as have been offered in support

7    of this claim.  See Wacht, 604 F.2d at 1246 (collecting cases); see also Aubut v. Maine, 431 F.2d

8    688, 689 (1st. Cir. 1970), adopted by Calderon v. United States District Court (Nicolaus), 96 F.3d

9    1102, 106 (9th Cir. 1996) ("Habeas corpus is not a general form of relief for those who seek to

10   explore their case in search of its existence.")

11   The Supreme Court has maintained that "[i]f district courts were required to allow federal

12   habeas applicants to develop even the most insubstantial factual allegations in evidentiary

13   hearings, district courts would be forced to reopen factual disputes that were conclusively resolved

14   in the state courts."  Landrigan v. Schriro, ___ U.S. ___, 127 S. Ct. 1933, 1940 (2007). Petitioner

15   has not presented the Court with facts that could point to a real possibility the prosecution had

16   possession of information indicating that Chacon or Meza lied about a deal, or lied about

17   Petitioner soliciting Meza to kill Castillo.  Petitioner's allegations fall far short of the showing

18   necessary to warrant an evidentiary hearing.

19   2.    *Claim 27*

20   Petitioner asserts "state appellate counsel was denied access to certain sealed proceedings,

21   held pursuant to trial counsels' discovery requests and from which trial counsel was excluded," in

22   violation of his rights under the Sixth, Eighth, and Fourteenth Amendments.  (TAP at 78.)

23   A.  California Supreme Court and Trial Court Proceedings

24   The trial court held ex parte proceedings regarding the defense's subpoenas duces tecum

25   and discovery requests to the San Diego District Attorney, California Department of Corrections,

26   San Diego County Sheriff's Department, United States Drug Enforcement Agency, and San Diego

27   Police Department, all proceedings taking place outside the presence of the defense and some from

28   which the prosecution was also excluded.

1    At these proceedings, the trial court first determined the relevance of the requested

2 materials, and if found relevant, the court then reached the issue of whether the asserted privilege

3 applied to the materials.  The privileges asserted included official information (California

4 Evidence Code §1040), identity of an informant (California Evidence Code §1041), and the work

5 product privilege.  (Pre-Trial Transcripts ["PRT"] LXIX 562; LXXV, LXXVI 774.)  During the

6 record correction process, appellate counsel requested that the trial court grant them access to

7 sealed trial proceedings from which the defense had been excluded.  (28 Aug. CT 6047.)  That

8 request was denied.  (Id. at 6097.)

9    Petitioner presented the instant claim as part of a post-trial motion to the California

10 Supreme Court, again requesting access to these sealed proceedings.  (Bates 1552-56.)  The

11 California Supreme Court summarily denied Petitioner's request.  (Id. at 1118.)

12    B.  Discussion

13    Petitioner alleges that the trial court erred in failing to disclose sealed documents to trial

14 counsel and concludes that "it is reasonably probable that the withholding of materials involving

15 Castillo and Meza significantly impaired, among others, Petitioner's rights to confrontation and

16 cross-examination."  (Pet. MSA at 7.)  Petitioner explains that "the trial court reviewed, in camera,

17 numerous files of inmates in county jails and prisons throughout California" and "[s]everal of

18 these hearings related to the court's review of prison files of critical witnesses against Petitioner at

19 the guilt and penalty phases of the trial."  (Pet. Reply at 4.)  Petitioner asserts this Court "must not

20 only review these materials to determine if the trial court erred in failing to disclose the documents

21 [sic] to Petitioner's trial counsel, but should also permit Petitioner's present counsel to review

22 materials to provide additional guidance to the Court regarding the importance of particular items

23 to Petitioner."  (Id.)

24    Respondent maintains that, aside from the Teague bar, Petitioner has failed to show that the

25 state supreme court's rejection of the claim was contrary to, or an unreasonable application of,

26 clearly established federal law.  (Resp. MTD at 8.)  Respondent additionally argues that "even if

27 Petitioner had a right to review the files, he has failed to allege facts demonstrating he suffered

28 prejudice."  (Id.)

Notwithstanding the Teague bar, the Court finds Petitioner's claim also fails on the merits. In Pennsylvania v. Ritchie, 480 U.S. 39 (1987), the Supreme Court held that a defendant's right to a fair trial and the government's interest in protecting confidential information were secured by submitting the records in question to the trial court for an in camera review.  In so holding, the Supreme Court specifically noted that an "advocate's eye," that is, review of the documents by defendant's attorney rather than in camera by the court, was not necessary to ensure a defendant's right to a fair trial.  Id. at 60.  Significantly, the Court also noted "[d]efense counsel has no constitutional right to conduct his own search of the States' files to argue relevance."  Id. at 59.

In Alderman v. United States, 394 U.S. 165 (1969), the Supreme Court held, on direct appeal, that an in camera review by the trial court of electronic surveillance material obtained without probable cause was inadequate considering the complexity of the case and the large volume of documents.  However, in Alderman, the Court distinguished the holding from other situations involving sealed proceedings, stating "[i]n both the volume of material to be examined and the complexity and difficulty of the judgments involved, cases involving electronic surveillance will probably differ markedly from those situations in the criminal law where in camera procedures have been found acceptable to some extent."  Id., 394 U.S. at 182 fn. 14. Finally, Alderman was a Fourth Amendment exclusionary rule case involving the fruits of an illegal search, and disclosure was limited to conversations that actually included the defendant or took place on his premises.  Id. at 185.  At issue here are law enforcement and  correctional department files that the trial court ruled were either not relevant or privileged.  Further, the trial court's decision to seal these materials was upheld by the state supreme court.

Petitioner also argues that "[a] crucial avenue of cross-examination may be foreclosed by the denial of access to material that would serve as the basis for this examination."  (Pet. Opp. at 13.)  Federal courts are generally reluctant to impose constitutional restraints on evidentiary rulings made by state trial courts, for instance noting that "[t]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Delaware v. VanArsdall, 475 U.S. 673, 679 (1986), quoting Deleware v. Fenester, 474 U.S. 15, 20 (1985).

01cv1322

Petitioner fails to set forth a factual basis for his belief that access to the sealed materials would have been of assistance in cross-examination, and has not presented the Court with any authority that would compel the relief he requests.  Petitioner asserts that "the trial court lacked counsel's knowledge of incidents [sic] triggering scrutiny of Chacon's bias against Petitioner and his brother and Castillo's and Meza's incentive to lie and fabricate Petitioner's involvement in the crime" and thus "the lack of access to the sealed records involving Castillo, Meza, and Detective Chacon were particularly damaging in the guilt phase of Petitioner's trial."  (Pet. Opp. at 15.) However, Petitioner presents nothing aside from his own speculation to suggest the documents in question would have even been favorable to the defense.

The trial court sealed these materials on a variety of grounds, including relevance and various privileges (PRT LXIX 562; LXXV, LXXVI 774), and Petitioner has not shown that the state court's denial of access to those files was objectively unreasonable.  Petitioner has failed to demonstrate that the refusal of the state court to provide appellate counsel with access to the sealed proceedings caused Petitioner to receive constitutionally ineffective assistance of appellate counsel.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The mere fact that appellate counsel was unable to directly review the documents fails to establish any constitutional violation that would entitle Petitioner to habeas relief.  Ritchie, 480 U.S. at 60.

Ultimately, Petitioner fails to show that the state supreme court's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law.  Williams, 529 U.S. at 412-13.  This claim does not merit relief.

### C.  Evidentiary Hearing

Regarding Claim 27, Petitioner asserts that if summary adjudication is not granted, "then in the alternative an evidentiary hearing should be granted to provide Petitioner with a meaningful opportunity to develop and present the facts necessary to reveal the illegality of his confinement." (Pet. MSA at 10.)  Petitioner asserts that "at a minimum, the Court should review the sealed records and compare them with the trial transcripts to determine if any of the information contained in the sealed records would have changed the outcome of Petitioner's trial had it been disclosed or amounted to a Brady violation."  (Pet. Opp. at 15.)  Petitioner alternately requests that

current counsel be allowed to examine the files under orders not to disclose which "would avoid public access to these materials while allowing Petitioner's attorney to view these documents or transcripts with the eye of an advocate, in order to fully protect Petitioner's constitutional rights." (Pet. Reply at 4.)

In support of this proposition, Petitioner cites to three cases without comment on how they support his position.  (Pet. Reply at 4.)  See United States v. Anderson, 509 F.2d 724 (9th Cir. 1975); United States v. Ordonez, 722 F.2d 530 (9th Cir. 1983); United States v. De Los Santos, 819 F.2d 94 (5th Cir. 1987).  The Court finds these cases do not support Petitioner's request in this matter.  All three cited cases were direct appeals that involved a defendant's request for disclosure of the identity of an informant, and before this court is a request to review sealed files of a much greater scope than the identity of one individual.  Here, Petitioner is challenging the state court's rejection of the trial court's refusal to allow counsel access to sealed documents.  Further, in Anderson, the Ninth Circuit ultimately rejected defendant's allegations of error, holding that discretion rests with the trial judge on whether to allow defense counsel or a defendant to be present at an in camera hearing regarding an informant, and the trial judge's decision would be reversed only if it "constitutes an abuse of discretion or constitutional error."  Id., 509 F.2d at 730. In De Los Santos, the Fifth Circuit agreed with Anderson that the exclusion of the defendant and defense attorney from a pre-trial hearing at which an informant's identity was revealed did not violate the Confrontation Clause.  Id., 819 F.2d at 97.  In Ordonez, the Ninth Circuit granted disclosure of the informant's information, holding that the inadequacy of the record made it impossible to determine if the district court had balanced the interests of the parties according to the requirements of Rovario v. United States, 353 U.S. 53 (1957).  However, Petitioner's request is not governed solely by Rovario, in which the Supreme Court held that a trial court must employ a balancing test between the individual's right to prepare his defense and the public's interest in protecting the flow of information in determining whether the identity of an informant shall be disclosed to the defense.  Id. at 62.  These cases do not support Petitioner's contention that the denial of access to the sealed files, which contained not only informant files but work product privileged information, as well as files the trial court deemed not relevant, was a constitutional

1  violation.

2      Petitioner's assertions that these sealed files *may* have contained material that *may* have

3  been beneficial to him on cross-examination is insufficient to require in camera inspection by this

4  Court, much less opening the sealed files for examination by counsel for Petitioner.  As stated

5  above, "[h]abeas corpus is not a general form of relief for those who seek to explore their case in

6  search of its existence."  Aubut, 431 F.2d at 689, adopted by Calderon, 96 F.3d at 1106.

7  Petitioner has failed to demonstrate a colorable, factual basis for his allegations of constitutional

8  error and Petitioner's speculations alone cannot stand as a basis for an evidentiary hearing.

9  Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir. 1995); see also Baja, 187 F.3d at 1078.  The

10  claim does not warrant an evidentiary hearing.

11      **IT IS SO ORDERED.**

12

13  **DATED:  October 25, 2007**

14  **IRMA E. GONZALEZ, Chief Judge**
    **United States District Court**

15

16

17

18

19

20

21

22

23

24

25

26

27

28