# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR JUAN AYALA,<br><br>Petitioner,<br><br>vs.<br><br>ROBERT K WONG, Acting Warden of the California State Prison at San Quentin,<br><br>Respondent. | CASE NO. 01cv1322-IEG (PCL)<br><br>***DEATH PENALTY CASE***<br><br>ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S APPLICATION FOR A CERTIFICATE OF APPEALABILITY AND ISSUING A LIMITED COA |

On April 17, 2009, Petitioner filed an application for a Certificate of Appealability ("COA") on Claims 1, 2, 4, 5, 22, 24, 26, and 27 of his federal habeas petition. The Court finds the issue appropriate for disposition without oral argument.

For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Petitioner's Application for a COA, and **ISSUES** a COA limited to Claims 1, 2, 4, 5, and 26.

## I. PROCEDURAL OVERVIEW

By an amended information filed on January 20, 1987, Petitioner Hector Juan Ayala ("Petitioner") and his brother Ronaldo Medrano Ayala were charged with the murders of Jose Luis Rositas, Marcos Antonio Zamora and Ernesto Dominguez Mendez. The

1  information alleged that the murders were committed on or about April 26, 1985, during a
2  robbery attempt where the brothers held four men captive in an automobile repair shop.
3  Both men were also charged with the attempted murder of Pedro Castillo, who was shot
4  during the drug-related robbery attempt, but who escaped and survived.  At trial, the
5  prosecution also presented evidence that a third man, Jose Moreno, helped in the
6  commission of these crimes.  Castillo provided the information to police that led to the
7  arrests and was the key prosecution witness at trial.

8       Petitioner was convicted on August 1, 1989, of three counts of first-degree murder
9  in violation of California Penal Code ("Cal. Penal Code") § 187, one count of attempted
10 murder in violation of Cal. Penal Code §§ 664 and 187, and one count of robbery and three
11 counts of attempted robbery in violation of Cal. Penal Code §§ 664 and 211--each count
12 with findings that Petitioner used a firearm in the commission of the crimes in violation of
13 Cal. Penal Code § 12022.5.  Petitioner was also found guilty of the two special
14 circumstance allegations, multiple murder under Cal. Penal Code § 190.2(a)(3), and murder
15 in the attempted commission of a robbery under Cal. Penal Code § 190.2(a)(17)(A).  The
16 jury returned a verdict of death for each of the three murders on August 31, 1989, and the
17 court entered judgment in accordance with the verdict on November 30, 1989.

18      Petitioner filed his opening brief on automatic appeal to the California Supreme
19 Court on April 23, 1998, raising nineteen (19) separate issues.  The California Supreme
20 Court denied the appeal on August 28, 2000.  People v. Ayala, 24 Cal.4th 243 (2000).  On
21 November 15, 2000, the state court denied the petition for rehearing.  On March 15, 2001,
22 Petitioner petitioned for a writ of certiorari with the United States Supreme Court, which
23 was denied on May 14, 2001.  On May 14, 2001, his judgment became final.

24      On August 9, 1999, Petitioner filed a habeas petition with the California Supreme
25 Court, raising three (3) grounds for relief.  Petitioner was not granted an evidentiary
26 hearing on those claims and his petition was summarily denied on August 30, 2000.

27      On July 20, 2001, Petitioner filed a request for appointment of counsel to handle his
28 federal habeas petition.  Petitioner filed an initial Petition in this Court on May 14, 2002.

After filing a Second Amended Petition on December 13, 2002, Petitioner filed a second state habeas petition in the California Supreme Court on March 17, 2003 in order to exhaust several unexhausted claims. Petitioner also filed a third state habeas petition in the California Supreme Court on April 27, 2005, and a fourth state habeas petition on December 28, 2007.[1]

Petitioner filed his Third Amended Petition with this Court on December 9, 2004. On April 11, 2006, the Court denied Petitioner's request for summary adjudication and/or an evidentiary hearing regarding Petitioner's Group One Claims (Claims 12 and 13) and granted Respondent's motion for summary adjudication of those claims. (Doc. No. 147.) On October 23, 2006, the Court denied Petitioner's request for summary adjudication and/or an evidentiary hearing on the Group Two Claims (Claims 1, 2, 4, 5, and 9) and granted Respondent's motion to dismiss those claims. (Doc. No. 184.) On December 6, 2006, the Court denied Petitioner's motion for summary adjudication and/or an evidentiary hearing on the Group Three Claims (Claims 6, 7, 8, 10 and 11) and granted Respondent's motion to dismiss those claims. (Doc. No. 194.) On December 19, 2006, the Court denied Petitioner's motion for reconsideration of the Order on the Group Two Claim (Claim 5). (Doc. No. 200.) On March 15, 2007, the Court denied Petitioner's motions for summary adjudication and/or an evidentiary hearing on the Group Four Claims (Claims 14, 15, 16, 17, 19, 20, and 21) and granted Respondent's motion for summary adjudication on those claims. (Doc. No. 208.) On July 9, 2007, the Court denied Petitioner's motion for summary adjudication on the Group Five claims (Claims 22, 23, 24, and 25) and granted Respondent's motion for summary adjudication on those claims. (Doc. No. 224.) On October 25, 2007, the Court denied Petitioner's motion for summary adjudication on the first portion of the Group Six claims (Claims 18 and 27) and granted Respondent's motion for summary adjudication on those claims. (Doc. No. 237.) On February 13, 2009, the Court denied Petitioner's motion for summary adjudication on Claim 26 and granted

---

[1] Claim 26 in the instant Petition was raised in the first, third and fourth state habeas petitions. The third state habeas petition was denied without prejudice to refiling, and the fourth state habeas petition is fully briefed and awaiting decision by the California Supreme Court.

1 Respondent's motion for summary adjudication on Claim 26, thereby denying Petitioner's
2 Third Amended Petition in its entirety. (Doc. No. 257.)
3      On March 13, 2009, Petitioner filed a Notice of Appeal, and on March 19, 2009, the
4 Court ordered Petitioner to file a brief identifying those issues on which he seeks a
5 certificate of appealability. On April 17, 2009, Petitioner filed an Application for
6 Certificate of Appealability on Claims 1, 2, 4, 5, 22, 24, 26, and 27.

## II. STANDARD OF REVIEW

8      The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") amended 28
9 U.S.C. § 2253 to require a "certificate of appealability" for § 2254 cases on a claim-specific
10 basis. Specifically, section 2253(c) provides:

> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>     (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
>     (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

18      The Supreme Court has elaborated on the application of this requirement, stating
19 that "[w]here a district court has rejected the constitutional claims on the merits, the
20 showing required to satisfy section 2253(c) is straightforward: The petitioner must
21 demonstrate that reasonable jurists would find the district court's assessment of the
22 constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000);
23 see also Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) ("Indeed, a claim can be debatable
24 even though every jurist of reason might agree, after the COA has been granted and the
25 case has received full consideration, that Petitioner will not prevail.")
26      Additionally, the Supreme Court has stated that a claim may also warrant a
27 certificate of appealability when the "questions are adequate to deserve encouragement to
28 proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 (1983), overruled in part on other

grounds, Lindh v. Murphy, 521 U.S. 320 (1997).

## III. DISCUSSION

**A.     Claims 1, 2, 4, and 5**

Claim 1 and 2 challenged the exclusion of defense counsel and the defendant from the hearing during which the prosecution proffered its reasons for exercising peremptory challenges against certain minority jurors, pursuant to defense counsel's Batson/Wheeler motions.  Claim 4 again challenged the validity of the *ex parte* Batson/Wheeler hearings, claiming that those proceedings violated the equal protection rights of the seven minority jurors who were the subject of the proceedings, and resulted in a violation of Petitioner's due process rights.  Claim 5 alleged that the loss of a majority of the juror questionnaires in his case violated Petitioner's constitutional rights, because the loss rendered the record on appeal inadequate to permit meaningful appellate review of his Batson/Wheeler claims.

The California Supreme Court rejected Petitioner's Batson/Wheeler claims, concluding that while the *ex parte* proceedings constituted error under state law, the state law error, and any error that occurred under federal law, was harmless.  The state court reasoned that "[o]n these facts, we are confident that the prosecutor was not violating Wheeler, and that defense counsel's presence could not have affected the outcome of the Wheeler proceedings."  Ayala, 24 Cal.4th at 266.  Similarly, the state supreme court rejected Petitioner's contention that the *ex parte* proceedings violated Petitioner's own right to be present, and that any federal constitutional error arising from his exclusion was harmless.  Id. at 269.  In rejecting Petitioner's Claim 4 allegations, the California Supreme Court stated that: "[o]n the record before us, we are confident that no such exclusion occurred.  The prosecutor articulated, at a minimum, plausible criteria for his excusals, the trial court agreed that the excusals were proper, and to the extent the written record before us touches on the prosecutor's stated reasons, it confirms that they were not pretextual."  Ayala, 24 Cal. 4th at 269.  In rejecting Petitioner's Claim 5 assertion, the state supreme court held that any federal error arising from loss of juror questionnaires was harmless under Chapman, and that there was no prejudice, since the loss did not affect petitioner's

1  ability to prosecute his appeal.  Id. at 269-70.

2  In this Court's Group Two Order, the Court first agreed with Respondent's contention that Claims 1 and 2 were barred by Teague v. Lane, and alternatively held that both claims failed on the merits.  (Doc. No. 184 at 8.)  Although this Court acknowledged a Ninth Circuit Batson case in which that court held "[a]bsent . . . compelling justification, ex parte proceedings are anathema in our system of justice and, in the context of a criminal trial *may* amount to a denial of due process," United States v. Thompson, 827 F.2d 1254, 1258-59 (9th Cir. 1987) (emphasis added), this Court also found particular relevance in the Supreme Court's instruction in Batson that discretion would be left to the lower court to "formulate particular procedures the be followed upon a defendant's timely objection to a prosecutor's challenges." Id., 476 U.S. at 99 and fn. 24.  Citing analogous decisions by the Sixth and Seventh Circuit courts, and the United States Supreme Court's admission in Georgia v. McCollum, 505 U.S. 42, 58 (1992), that *in camera* discussions are sometimes appropriate, this Court rejected Petitioner's claim, reasoning that in light of those decisions "the Court doubts whether the trial court's procedure was constitutionally defective as a matter of clearly established Federal law."  (Doc. No. 184 at 14.)  To that end, this Court concluded that "the prosecutor's proffered non-discriminatory reasons for exercising each of the peremptory challenges was amply supported by the record.  This is not a case where the prosecutor offered patently inappropriate or even marginal reasons for striking the jurors.  The Court finds that the state court's harmless error analysis was not objectively unreasonable."  (Id. at 16.)

22  This Court also found unavailing Petitioner's contention that the ex parte Batson/Wheeler proceedings violated the equal protection rights of the minority jurors, holding that "[t]he prosecutor offered credible reasons for challenging the jurors in question, and the trial court concluded that those reasons were sufficient and race-neutral. The California Supreme Court found no evidence of a due process violation under Powers v. Ohio, based on its findings on the record before it, and properly applied controlling federal law."  (Doc. No. 184 at 20.)  This Court also rejected Petitioner's Claim 5

contention that the loss of juror questionnaires rendered the record on appeal inadequate to permit meaningful appellate review, finding that the "record in this case does allow a reviewing court to examine whether the prosecution exercised its peremptory challenges in an appropriate manner." (Id. at 25.)

In his present Application, Petitioner requests a COA on Claims 1, 2, 4, and 5, reasoning that "[i]t is clear that reasonable jurists could and in fact have debated whether Petitioner's *Batson* claims should have been resolved in a different manner." (Doc. No. 261 at 4.) Petitioner directs the Court's attention to the dissent of Chief Justice George, joined by Justice Kennard, to the California Supreme Court's denial of these claims on direct appeal. In dissent, Chief Justice George wrote:

> I agree with the majority's conclusion that the ex parte procedure employed by the trial court to review defendant's challenge to the prosecution's use of peremptory challenges under *People v. Wheeler* and *Batson v. Kentucky* [citations omitted] was error, but I disagree with its unprecedented conclusion that the erroneous exclusion of the defense from a crucial portion of jury selection may be deemed harmless. I believe that applicable state and federal precedent clearly requires that we reverse defendant's conviction and remand this case for a new trial.

Ayala, 24 Cal. 4th at 291.

Reasoning that the exclusion of defense counsel and the defendant from the Batson/Wheeler proceedings warranted relief, more so when coupled with loss of the majority of the juror questionnaires, the Chief Justice concluded that "as a result of the trial court's error, we are left with a record that is inadequate for our review and that cannot be reconstructed at this time." Id. at 297.

Recognizing the "relatively low" threshold for granting a certificate of appealability, Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002), and that a petitioner does not need to demonstrate "that he should prevail on the merits," Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000), the Court finds these issues suitable for a COA. While the Court of Appeals may affirm the Court's decision after a full consideration of the issues raised, the merits of these four claims could be considered debatable among jurists of reason. See Slack, 529 U.S. at 484. Therefore, the Court **GRANTS** Petitioner's request

1  for a certificate of appealability with respect to Claims 1, 2, 4, and 5.

2  **B.     Claim 22**

3        This claim challenges the constitutionality of the trial court's decision to allow evidence of prior unadjudicated offenses into evidence at the penalty phase of trial. Petitioner asserts that he has made a "substantial showing of the denial of his constitutional rights under Apprendi v. New Jersey." (Doc. No. 261 at 16.)

      In a capital case a jury must make the findings of aggravating factors, including prior unadjudicated offenses, beyond a reasonable doubt. Petitioner's jury was instructed as follows: "[b]efore you may consider any of such criminal acts as an aggravating circumstance in this case, you must first be satisfied *beyond a reasonable doubt* that Hector Ayala did, in fact commit such criminal acts." (RT 13375-76 (emphasis added).) In this claim, the Court considered Petitioner's argument that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), required that the penalty phase jury in Petitioner's case must unanimously find him guilty of the prior unadjudicated offenses beyond a reasonable doubt before it considered that evidence in their penalty phase deliberations. In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.

      Contrary to Petitioner's assertion, the Court found that the state court's decision not to extend Apprendi to the facts and circumstances alleged by Petitioner was not contrary to, nor an unreasonable application of, any clearly established federal law. (Doc. No. 224 at 11-12.) Finding that none of the cases upon which Petitioner relied, including Apprendi, "require such a procedure [jury unanimity in finding a defendant guilty of a prior unadjudicated offense before using evidence can be considered in penalty phase proceedings] be implemented in a death penalty jury proceedings under the Sixth and Fourteenth Amendments," the Court rejected Claim 22 on the merits. (Doc. No. 224 at 12.)

      Petitioner fails to make a substantial showing that reasonable jurists would find the Court's assessment of Claim 22 debatable or wrong. Slack, 529 U.S. at 484. Accordingly,

the Court **DENIES** Petitioner's request for a COA on Claim 22.

C. **Claim 24**

This claim challenges the constitutionality of the 1978 death penalty statute, under which Petitioner was charged, tried and sentenced, due to its alleged failure to narrow the number of death-eligible offenses. In his present Application, Petitioner argues that a COA is warranted because he has made a "substantial showing of the denial of a constitutional right, namely, Petitioner's Eighth and Fourteenth Amendment rights to due process and a reliable determination of his death sentence under Tuilaepa v. California, 512 U.S. 967, 971-972 (1994)." (Doc. No. 261 at 22.)

The California Supreme Court denied Petitioner's statutory challenge on direct appeal, concluding that "the combination of numerous available special circumstances and the prosecution's charging discretion does not render the death penalty law invalid." Ayala, 24 Cal.4th at 290.

Petitioner presented his argument to the Court accompanied by the declaration of Professor Steven F. Schatz, based on a study Professor Schatz conducted with Nina Rivkind on California cases involving murder convictions. Professor Schatz concluded that, based upon their study, the California statutory scheme was "more arbitrary than those in existence at the time of Furman, and is therefore in violation of the Eighth Amendment." (Ex. 1 to Doc. No. 213 at 18.) This Court denied Petitioner's claim, reasoning in part as follows:

> The United States Supreme Court has since upheld the constitutionality of two state statutes on the grounds that both statutes satisfy the requirements set forth in Furman. See Gregg, 428 U.S. at 198; Profitt, 428 U.S. at 253. Further, the Court notes that both the Florida and Georgia statutes are substantially similar in scope and effect to that of California. In addition, the Ninth Circuit has repeatedly upheld the constitutionality of the 1978 California statute. See Karis, 283 F.3d at 1141; Mayfield, 270 F.3d at 924. Accordingly, Petitioner has failed to present this Court with persuasive grounds for reversing the judgment of the state court.
>
> ...
>
> The 1978 death penalty statute, Cal. Penal Code 190.2, performs a genuine narrowing function and thus fulfills the constitutional requirement imposed by Furman to distinguish between those murderers who are and are not eligible for the death penalty. Petitioner fails to establish that California's 1978 death

penalty statute violates the federal Constitution. This Court cannot say the state court's denial of Claim 24 was contrary to, or an unreasonable application of, clearly established federal law, or that it was based upon an unreasonable determination of the facts. <u>Williams</u>, 529 U.S. at 412-13. Petitioner does not merit relief on this claim.

(Doc. No. 224 at 19.)

Despite Petitioner's assertions to the contrary, the Supreme Court decision in <u>Tuilaepa</u> does not support his request for a COA on Claim 24. <u>Tuilaepa</u> involved a challenge to the constitutionality of certain *penalty phase* factors of the California death penalty statute. In <u>Tuilaepa</u>, the petitioner asserted that certain sentencing factors, outlined in section 190.3, were unconstitutionally vague.[2] In contrast, Petitioner's Claim 24 alleges that the special circumstance eligibility factors enumerated in Cal. Penal Code section 190.2[3], "'potentially sweep[] the great majority of murderers into its grasp' and thus fails to perform the narrowing function required by federal law," pursuant to <u>Furman v. Georgia</u>. (Doc. No. 261 at 22.) <u>Tuilaepa</u> did not involve a challenge to any eligibility factors, at least one of which a jury must first find to be true in the *guilt phase* for the death penalty to

---

[2] <u>Tuilaepa</u> involved a challenge to three penalty phase factors under section 190.3 of the California Penal Code, which reads, in part:
   In determining the penalty, the trier of fact shall take into account any of the following factors if relevant:
   (a) The circumstances of the crime of which the defendant was convicted in the present proceeding and the existence of any special circumstances found to be true pursuant to Section 190.1.
   (b) The presence of absence of criminal activity by the defendant which involved the use or attempted use of force or violence or the express or implied threat to use force or violence.
   ...
   (i) The age of the defendant at the time of the crime.

[3] California Penal Code section 190.2 currently enumerates 32 special circumstances, 26 of which were in effect at the time of Petitioner's conviction and death sentence. The statute reads in part:
   (a) The penalty for a defendant who is found guilt of murder in the first degree is death or imprisonment in the state prison for life without the possibility of parole if one or more of the following special circumstances has been found under Section 190.4 to be true:
   ...
   (3) The defendant, in this proceeding, has been convicted of more than one offense of murder in the first or second degree.
   ...
   (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies:
      (A) Robbery in violation of Section 211 or 212.5.
      ...
      (G) Burglary in the first or second degree in violation of Section 460.

1 become available as a potential punishment for a criminal defendant. Consequently, the
2 Supreme Court decision in Tuilaepa has no materially impact on Claim 24.

3 Evaluating this claim under the proper standard of review, Petitioner fails to make a
4 substantial showing that reasonable jurists would find the Court's assessment of the
5 constitutional claims debatable or wrong. See Slack, 529 U.S .at 484; see also Mayfield,
6 270 F.3d 915, 924 (9th Cir. 2001) ("A reasonable jurist could not debate, therefore, that the
7 1978 California statute, which narrowed the class of death-eligible defendants at both the
8 guilt and penalty phases, was constitutional.") Moreover, the Court does not find Claim 24
9 to present any questions that are "adequate to deserve encouragement to proceed further."
10 Barefoot, 463 U.S. 880 (1983). Accordingly, the Court **DENIES** Petitioner's request for a
11 certificate of appealability on Claim 24.

**D.     Claim 26**

13 In this claim, Petitioner asserted he is a Mexican national and was denied his right to
14 consular notification and access under Article 36 of the Vienna Convention on Consular
15 Relations, which resulted in a federal Constitutional violation. Petitioner asserts that a
16 COA is warranted on this claim because he had made a "substantial showing of the denial
17 of a constitutional right, namely, Petitioner's Sixth, Eighth, and Fourteenth Amendment
18 rights to effective assistance of counsel, due process, a fair trial, and a reliable
19 determination of his death sentence under the Vienna Convention on Consular Relations."
20 (Doc. No. 261 at 25.)

21 In his first state habeas petition, the California Supreme Court denied Petitioner's
22 Vienna Convention claim, stating that "petitioner fails to allege facts showing that he falls
23 within the protection of the Vienna Convention on Consular Relations and Optional
24 Protocol on Disputes. In addition, he fails to show prejudice. (Citation omitted.)" (Doc.
25 No. 36, Lodgment No. 25.)

26 This Court rejected Petitioner's Vienna Convention claim, finding it barred under
27 Teague v. Lane, and alternatively concluding that the claim failed on the merits. In the
28 Application for a COA on this claim, Petitioner objects to the Court's determination that

1  the United States Supreme Court has never held that the Vienna Convention created

2  individual rights that were enforceable on federal habeas review. (Doc. No. 261 at 26.)

3  Moreover, Petitioner objects to the standard the Court applied in evaluating the prejudice

4  Petitioner suffered from the lack of consular assistance. (Id. at 29.)

5  In rendering a decision that Claim 26 was barred under Teague v. Lane, the Court

6  engaged in a review of United States Supreme Court decisions on this subject, as follows:

> In 1998, several years before Petitioner's conviction became final, the Supreme Court stated that "[t]he Vienna Convention ... *arguably* confers on an individual the right to consular assistance upon arrest." Breard v. Greene, 523 U.S. 371, 376 (1998) (emphasis added). However, the Supreme Court clearly allowed for the possibility that the Vienna Convention does not confer such rights, and declined to reach the issue. In Medellin v. Dretke, 544 U.S. 660 (2005), the Supreme Court acknowledged that the International Court of Justice ["ICJ"] had made a determination that the Vienna Convention guaranteed individual rights, but declined to adopt or reject the decision of that body. Id. at 666-667. Later, in Sanchez-Llamas v. Oregon, 548 U.S. 331 (2006), the Supreme Court again declined to definitively rule on the issue whether the treaty created individually enforceable rights, but "assume[d], without deciding" that a petitioner was granted such rights in rejecting a claim asserting that the suppression of evidence was an available remedy for a violation of those rights. Id. at 343. ("Because we conclude that [the petitioners] are not in any event entitled to relief on their claims, we find it unnecessary to resolve the question whether the Vienna Convention grants individuals enforceable rights"); see also Medellin v. Texas, 552 U.S. ___, 128 S.Ct. 1346, 1357 fn.4 (2008) (explicitly following Sanchez-Llamas in declining to resolve question of whether Vienna Convention grants individually enforceable rights).

(Doc. No. 257 at 8.)

The Court therefore reasoned that even when given numerous opportunities to establish that the Vienna Convention created individually enforceable rights, the United States Supreme Court had repeatedly and expressly declined to reach a conclusion on the issue. The Court concluded that there was:

> no clearly established law that the Vienna Convention creates individually enforceable rights, and Petitioner's claim falls within the scope of Teague v. Lane. Petitioner asserts that he is entitled to habeas relief from his conviction and sentence based on the state's violation of Article 36. Such a result is not currently dictated by the Constitution, and was certainly not compelled by existing precedent at the time his conviction became final. Were this Court to hold that the failure to notify a petitioner of his right to consular access under Article 36 of the Vienna Convention mandates the reversal of a criminal conviction and death sentence, it would create a new rule of criminal procedure.

(Doc. No. 257 at 9.)

While the Court initially held that habeas relief would be barred under Teague, the Court also considered Petitioner's claim on the merits as an alternative ground for the holding. Rejecting Petitioner's assertion that the state court made an unreasonable determination of the facts in holding that Petitioner failed to demonstrate he fell within the protection of the Vienna Convention, the Court noted:

> the trial record contains a booking form completed upon Petitioner's arrest for these murders and signed by Petitioner, which states that Petitioner was born in San Diego and had resided there his entire life. Based on the evidence provided to the state court, it does not appear that the state court's decision was based on an unreasonable determination of the facts.

(Doc. No. 257 at 10.) The Court also found that even if the state court's determination of the facts was objectively unreasonable, habeas relief was not automatically warranted, reasoning that the factual finding made by the state court was not dispositive of Petitioner's claim because the state court also made a determination that Petitioner did not suffer prejudice.

The Court then considered and rejected Petitioner's allegations of prejudice arising from the state's denial of consular access, stating:

> In sum, the Court previously ruled that the *ex parte* Batson hearings did not result in prejudice to Petitioner, and thus do not support Petitioner's current assertion of prejudice. Moreover, the existence of a "potentially favorable witness" who might have testified with Consular assistance is not sufficient to demonstrate prejudice without any tangible offer of proof as to the identity of the witness, what testimony the witness could have offered, and what impact it could have had on the proceedings. Additionally, the Court is not persuaded that the intervention or assistance of the Mexican Consulate would have impacted the district attorney's office's decision to seek the death penalty for these crimes.

(Doc. No. 257 at 14.)

Mindful of the less than stringent standard for obtaining a certificate of appealability, and considering the Court's decision to grant a COA on Petitioner's Batson claims (see section III-A, supra), which Petitioner has asserted have direct relevance to the prejudice analysis of this claim[4], the Court concludes that the issues raised by Petitioner in

---

[4] This Court rejected Petitioner's Claim 26 assertion "that the Mexican Consulate could have helped prevent or would have objected to the ex parte Batson proceedings held by the trial court" based in part on the Court's previous rejection of Petitioner's Group Two claims, in which this Court concluded that Petitioner had failed to demonstrate "that he suffered prejudice from the ex parte hearings." (Doc. No. 257 at 13.)

Claim 26 deserve encouragement to proceed further. See Barefoot, 463 U.S. at 893. Accordingly, the Court **GRANTS** Petitioner's application for a COA on Claim 26.

**E.     Claim 27**

This claim challenged the constitutionality of the state court's denial of appellate counsel's request for access to records of certain sealed, ex parte proceedings, such as discovery requests and subpoenas duces tecum. Petitioner asserts that he has "made a substantial showing of the denial of a constitutional right, namely, Petitioner's Sixth, Eighth, and Fourteenth Amendment rights to effective assistance of appellate counsel, a reliable determination of his death sentence, to meaningful appellate review, and to due process under Alderman v. United States, 394 U.S. 165, 182 (1969)." (Doc. No. 261 at 32.)

On habeas review, this Court held that Petitioner's claim was barred under Teague, reasoning that:

> Granting Petitioner a right of access to sealed trial proceedings is not compelled by existing Supreme Court precedent ... [and granting such access] ... would result in the creation of a new rule of criminal procedure which does not fall under either of the exceptions to Teague. However, even assuming Claim 27 would not be barred under Teague, it is without merit for the reasons set forth below.

(Doc. No. 237 at 9.)

In rejecting this claim, the Court noted that the United States Supreme Court had specifically held that a review of sealed documents by a defendant's attorney, rather than an in camera review by a court, was not necessary to ensure the defendant's right to a fair trial. See Pennsylvania v. Ritchie, 480 U.S. 39, 60 (1987). The Court found unpersuasive Petitioner's reliance on Alderman in support of his claim, concluding that a Fourth Amendment exclusionary rule case involving the fruits of an illegal search done via electronic surveillance involved a different standard than the instant case, in which seeks access to law enforcement and correctional department files that the trial court held were either not relevant to his case, or privileged. (Doc. No. 237 at 19.) To that end, the Court found significant the Alderman Court's articulation that "cases involving electronic

surveillance will probably differ markedly from those situations in the criminal law where in camera procedures have been found acceptable to some extent." Id. at 182 fn. 14.

In holding that Petitioner ultimately failed to establish any constitutional violation arising from the state court's denial of access to the contested files, the Court reasoned in part:

> Petitioner fails to set forth a factual basis for his belief that access to the sealed materials would have been of assistance in cross-examination, and has not presented the Court with any authority that would compel the relief he requests ... Petitioner presents nothing aside from his own speculation to suggest the documents in question would have even been favorable to the defense.

(Doc. No. 237 at 20.)

In his present Application, Petitioner fails to make any substantial showing that reasonable jurists would find the Court's assessment of this claim debatable or wrong. Slack, 529 U.S. at 484. Accordingly, the Court **DENIES** Petitioner's request for a certificate of appealability on Claim 27.

## IV.  CONCLUSION

Petitioner's Application raises several issues on which reasonable jurists could disagree, or that deserve encouragement to proceed further. See Slack, 529 U.S. at 484; Barefoot, 463 U.S. at 893. For the foregoing reasons, the Court **GRANTS** Petitioner's Application for a COA on Claims 1, 2, 4, 5, and 26 and **DENIES** Petitioner's Application for a COA on Claims 22, 24, and 27. The Court **ISSUES** a COA limited to Claims 1, 2, 4, 5, and 26.

**IT IS SO ORDERED.**

**DATED: May 13, 2009**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge
United States District Court**